# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

№ 16-CV-2814 (JFB)

————————————————

## RAYMOND A. TOWNSEND,

Appellant,

VERSUS

## GERALYN GANCI,

Appellee.

————————————————

**MEMORANDUM AND ORDER**
February 27, 2017

————————————————

JOSEPH F. BIANCO, District Judge:

The instant case is a *pro se* appeal by Raymond A. Townsend ("Townsend" or "appellant") from the May 16, 2016 summary judgment order of the Honorable Carla E. Craig, United States Bankruptcy Judge, holding that the debt owed by appellant to *pro se* appellee Geralyn Ganci ("Ganci" or "appellee") is non-dischargeable pursuant to the Bankruptcy Code, 11 U.S.C. § 523(a)(6). *See In re Townsend*, 550 B.R. 220 (Bankr. E.D.N.Y. 2016). The debt at issue stems from a civil judgment following a jury trial before this Court in *Ganci v. U.S. Limousine Service Ltd., et al.*, 10-CV-3027 (JFB) (AKT) (E.D.N.Y.) (the "Civil Case"). On September 16, 2014, the jury found Townsend liable to Ganci for employment discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and New York law. (Civil Case, ECF No. 119.) The jury awarded Ganci $450,000 in compensatory damages and $100,000 in punitive damages against Townsend, and it also found that Townsend was not liable for intentional infliction of emotional distress ("IIED"). (*Id.*) The Court subsequently set aside the punitive damages award after determining that punitive damages against Townsend were not available under Title VII or New York law (*id.*, ECF No. 143), and it granted Ganci $167,478.50 in attorneys' fees and $3,168 in costs, *Ganci v. U.S. Limousine Service Ltd.*, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015).

The Clerk of the Court entered final judgment in the Civil Case on April 8, 2015.

(Civil Case, ECF No. 148.) Thereafter, appellant filed for Chapter 7 bankruptcy on July 27, 2015. *See Townsend*, 550 B.R. at 223. Appellee then commenced an adversary proceeding seeking a determination that the Civil Case judgment is non-dischargeable (the "Adversary Proceeding"), *id.* at 224, which led to this appeal.

For the reasons set forth below, having conducted a *de novo* review of the Bankruptcy Court's decision, the Court concludes that appellant's arguments are without merit and affirms the order of the Bankruptcy Court in its entirety.

## I. BACKGROUND

The Court summarizes the facts and procedural history relevant to the instant appeal.

### A. The Civil Case

Ganci filed suit against Townsend in the Civil Case on July 1, 2010 alleging claims of employment discrimination based on sexual harassment, hostile work environment, and retaliation; as well as claims for IIED and negligent infliction of emotional distress. (Civil Case, ECF No. 1.) Townsend moved for summary judgment and spoliation sanctions on December 1, 2011 (*id.*, ECF No. 38), and Ganci cross-moved for summary judgment on January 19, 2012 (*id.*, ECF No. 43). In an oral ruling on September 10, 2012, this Court denied the parties' motions. (*Id.*, ECF No. 54.) Of note, the Court held that a rational jury could find for Ganci on her employment discrimination claims because she had "stated under oath that Mr. Townsend

sexually assaulted her on one occasion, that he sent unwanted, unsolicited, and unwelcome text messages and voice mails of sexually explicit nature over an extended period of time and attempted to compel sexual relations with her during that extended period of time." (*Id.*, ECF No. 57 at 12:17-22.)

The Civil Case proceeded to a six-day jury trial from September 3, 2014 to September 16, 2014 on plaintiff's employment discrimination and IIED claims. (*See id.*, ECF Nos. 105-16.) The jury returned a verdict on September 16, 2014, finding for Ganci on the employment discrimination claims and for Townsend on the IIED claim. (*Id.*, ECF No. 119.) On the verdict form, the jury responded affirmatively to, *inter alia*, the following questions:

> 1. Did plaintiff prove, by a preponderance of the evidence, that Raymond Townsend subjected her to offensive acts or statements about sex?

> 2. Did plaintiff prove, by a preponderance of the evidence, that she did not welcome the offensive acts or statements, which means that plaintiff did not directly or indirectly invite or solicit them by her own acts or statements?

> 3. Did plaintiff prove, by a preponderance of the evidence, that the offensive acts or statements were so severe or pervasive that they materially altered the terms and conditions of her employment?

4. Did plaintiff prove, by a preponderance of the evidence, that a reasonable person—not someone who is overly sensitive—would have found that the offensive acts or statements materially altered the terms and conditions of the person's employment, which means that a reasonable person would have found the working conditions hostile and abusive?

5. Did plaintiff prove, by a preponderance of the evidence, that she herself believed that the offensive acts or statements materially altered the terms and conditions of her employment, meaning that plaintiff believed that her work environment was hostile or abusive?

7. Did plaintiff prove, by a preponderance of the evidence, that she was constructively discharged?

13. Did plaintiff prove, by a preponderance of the evidence, that Raymond Townsend acted with malicious intent to violate plaintiff's rights, or with reckless disregard of plaintiff's rights, such that punitive damages are warranted against Raymond Townsend?

(*Id.*) The jury responded in the negative to the following questions:

6. Did plaintiff prove, by a preponderance of the evidence, that she was terminated because plaintiff rejected Raymond Townsend's sexual advances?

9. Did plaintiff prove, by a preponderance of the evidence, her claim that Raymond Townsend intentionally inflicted emotional distress upon her?

(*Id.*)

The jury awarded Ganci $450,000 in compensatory damages and $100,000 in punitive damages against Townsend (*id.*); however, in a subsequent oral ruling, the Court set aside the punitive damages award after determining that punitive damages against Townsend were not available under Title VII or New York law (*id.*, ECF No. 143). The Court also granted Ganci $167,478.50 in attorneys' fees and $3,168 in costs, *Ganci*, 2015 WL 1529772, at *8, and the Clerk of the Court entered final judgment in the Civil Case on April 8, 2015 (Civil Case, ECF No. 148).

B. The Adversary Proceeding

After Townsend filed a voluntary petition under chapter 7 of the Bankruptcy Code on July 27, 2015, Ganci commenced the Adversary Proceeding on September 18, 2015 seeking a determination that the Civil Case judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) ("Section 523(a)(6)"). *Townsend*, 550 B.R. at 223-24. Ganci moved for summary judgment on February 26, 2016, and the Bankruptcy Court granted her motion on May 16, 2016. *Id.* at 224, 228.

The Bankruptcy Court held that (1) collateral estoppel precluded Townsend from re-litigating in the Adversary Proceeding identical issues that were

decided in the Civil Case; and (2) the Civil Case judgment was non-dischargeable under Section 523(a)(6) because that debt resulted from "willful and malicious injury" by Townsend to Ganci. *Id.* at 225-28 (quoting 11 U.S.C. § 523(a)(6)).

## C. The Appeal

On June 2, 2016, Townsend filed a *pro se* Notice of Appeal of the Bankruptcy Court's judgment. The Notice of Bankruptcy Record Received was filed on October 14, 2016, and appellant filed his brief on December 14, 2016. Appellee, also proceeding *pro se*, did not file a brief within the time period specified by Federal Rule of Bankruptcy Procedure 8018. The Court has fully considered all of the submissions in this appeal.

## II. STANDARD OF REVIEW

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *see also In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law de novo, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion.").

A bankruptcy court's decision to grant summary judgment based upon undisputed facts is reviewed *de novo*. *See In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001) ("[W]ith respect to the grant of partial summary judgment, the posture in which this appeal reaches us, we review *de novo* whether, viewing the record in the light most favorable to the non-movant . . . any genuine and disputed issue of material fact underlies the bankruptcy court's decision."); *In re Perosio*, 364 B.R. 868, 871 (N.D.N.Y. 2006) ("This Court also reviews the Bankruptcy Court's denial of Appellants' motions for summary judgment *de novo*."); *accord Beier v. Beier*, No. 94 Civ. 2677 (SS), 1995 WL 60026, at *2 (S.D.N.Y. Feb. 14, 1995).

## III. DISCUSSION

On appeal, Townsend does not contest the collateral estoppel determination of the Bankruptcy Court. Instead, his challenge is limited to the non-dischargeability holding, and he argues specifically that the Bankruptcy Court improperly relied on *In re Spagnola*, 473 B.R. 518 (Bankr. S.D.N.Y. 2012), to find that the Civil Case judgment resulted from willful injury by Townsend to Ganci. In addition, appellant claims that the jury's finding of non-liability on the IIED claim demonstrates that it concluded that the employment discrimination conduct was not willful.

For the reasons that follow, having conducted a *de novo* review of the Bankruptcy Court's decision, the Court disagrees with appellant and affirms the order of the Bankruptcy Court.

## A. Applicable Law

The Bankruptcy Code discharges preexisting debts in order to give "honest but unfortunate" debtors a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). However, the Bankruptcy Code contains numerous exceptions to the "fresh start" principle and denies relief to debts resulting from certain types of undesirable

behaviors, such as injury by the debtor to the creditor. To that end, Section 523(a)(6) provides, in relevant part, that:

> A discharge under . . . this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

The Second Circuit has held that, as used in Section 523(a)(6),

> the word "willful" indicates "a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." The injury caused by the debtor must also be malicious, meaning "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." Malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances."

*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Stelluti*, 94 F.3d 84, 87-88 (2d Cir. 1996)). The party seeking to establish non-dischargeability—in this case appellee—must prove those elements by a preponderance of the evidence. *Id.*

B. Analysis

Having conducted a *de novo* review, the Court agrees with the Bankruptcy Court that appellee carried her burden under Section 523(a)(6).

With respect to the willfulness prong—the only element that Townsend challenges on appeal—the Bankruptcy Court held that, although "a finding that a defendant has created a hostile work environment does not *per se* lead to a finding of willfulness," *Townsend*, 550 B.R. at 226 (citing *In re Goldberg*, 487 B.R. 112, 127 (Bankr. E.D.N.Y. 2013)), the "jury's factual findings [in the Civil Case], however, establish that [Townsend] directly subjected [Ganci] to offensive acts or statements about sex. The jury further found that [Ganci] did not directly or indirectly invite or solicit such statements," *id.* at 226-27. The Bankruptcy Court cited *Spagnola* for the proposition that "[e]xposure to unwelcome sexual conduct, like an advancing of one's prurient interests to the point of harassment, is the injury that a sexual harassment victim suffers," *id.* at 227 (citing 473 B.R. at 523), and *Goldberg* for the principle that "where an employer's deliberate conduct is found to constitute unlawful discrimination against an individual employee, it necessarily follows that such intent was for the purpose of causing injury," *id.* (citing 487 B.R. at 127). Accordingly, the Bankruptcy Court concluded that because the Civil Case jury determined that appellant specifically directed discriminatory conduct in the form of sexual harassment at appellee, and appellee did not invite or solicit such conduct, those "facts are sufficient to establish that [Townsend] acted with the intent to cause the injury" at issue. *Id.*

Appellant argues that *Spagnola* is distinguishable because there, the civil jury was specifically asked and found that the defendant (*i.e.*, the debtor in the subsequent

5

bankruptcy action) intentionally discriminated against the plaintiff on the basis of her gender. He contends that, in contrast, the Civil Case resulted in no such finding, and that the jury's decision that he was not liable on the IIED claim establishes that he did not act willfully.

However, intent is not the only element of an IIED cause of action under New York law. As the Court instructed the jury, to prevail on her IIED claim, Ganci was required to show:

> (1) That Raymond Townsend's conduct towards plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency as measured by what the average member of the community would tolerate;

> (2) That Townsend's conduct caused severe emotional distress to plaintiff; and

> (3) Townsend acted with the desire to cause such distress to plaintiff, or under circumstances known to Townsend which made it substantially certain that that result would follow, or recklessly and with utter disregard of the consequence that might follow.

(Civil Case, ECF No. 112 at 25.) On the verdict form, the jury merely indicated that Ganci had failed to prove "by a preponderance of the evidence . . . that Raymond Townsend intentionally inflicted emotional distress upon her" (*id.*, ECF No. 119)—it did not state which IIED element Ganci had failed to satisfy. Accordingly, contrary to appellant's contention, it is not clear that the jury determined that his conduct toward appellee lacked willfulness.

Moreover, "[c]ourts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required" for purposes of Section 523(a)(6). *In re Ferrandina*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015) (collecting cases). As the court in *Ferrandina* correctly found, the creation of a workplace "environment permeated with intimidation, and volatility" based on "behavior that was inappropriate and offensive" satisfies this standard. *Id.* at 29 (citations omitted). There, the debtor "deliberately and intentionally discriminated against [the creditor] because of her gender. [He] repeatedly touched [the creditor] in a sexual manner without her consent, sent her sexually explicit e-mails, made sexually explicit comments, and called her late at night and on weekends to talk about sex." *Id.* As discussed above, there was evidence of similar conduct by Townsend in the Civil Case, and on that basis, the jury determined, *inter alia*, that Townsend subjected Ganci to offensive acts or statements about sex; that Ganci did not invite or solicit such acts or statements; and that the acts or statements were so severe or pervasive that they materially altered the terms and conditions of Ganci's employment. (Civil Case, ECF No. 119.) The Court holds that such findings evince intentional conduct by appellant. *See Goldberg*, 487 B.R. at 127.

In addition, although the Court set aside the Civil Case jury's punitive damages

award against Townsend because it concluded that such relief was unavailable as a matter of law, the jury did conclude, as indicated on the verdict form, that "Raymond Townsend acted with malicious intent to violate plaintiff's rights, or with reckless disregard of plaintiff's rights . . . ." (Civil Case, ECF No. 119.) The decision setting aside the punitive damages award did not negate that finding.[1]

Finally, the Court notes that the jury also concluded that Townsend constructively discharged Ganci. (*See id.*) In its instructions, the Court said that to prove constructive discharge, Ganci was required to show:

First, that Raymond Townsend made plaintiff's working conditions intolerable;

Second, that plaintiff's gender was a motivating factor in Townsend's actions; and

Third, that plaintiff's resignation was a reasonably foreseeable result of Townsend's actions, or Townsend acted with the intent of forcing plaintiff to quit.

(*Id.*, ECF No. 112 at 24.) The third element satisfies the willfulness prong of Section 523(a)(6) because the jury found that Townsend either acted with intent to

compel Ganci's resignation, or with the belief that such injury was substantially certain to result from his conduct. *See Ball*, 451 F.3d at 69; *Ferrandina*, 533 B.R. at 26.

Accordingly, for the foregoing reasons, the Court affirms the Bankruptcy Court's conclusion that the Civil Case judgment is non-dischargeable under Section 523(a)(6) of the Bankruptcy Code.[2]

IV. CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court is affirmed in its entirety. The Clerk of Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  February 27, 2017
        Central Islip, New York

* * *

Appellant Raymond A. Townsend, *pro se*.
Appellee Geralyn Ganci, *pro se*.

---

[1] In fact, based upon that finding and additional findings by the jury, a punitive damages award was made by the jury against Townsend's company under Title VII in the amount of $450,000, which was modified by the Court to $100,000 under the applicable statutory cap. (*See* Civil Case, ECF Nos. 119, 143.)

[2] Although Townsend does not contend on appeal that Ganci failed to satisfy the malice prong of Section 523(a)(6), the Court has independently reviewed that element and affirms the Bankruptcy Court's determination because appellant's conduct was clearly wrongful and without just cause or excuse.